**SULAIMAN LAW GROUP, LTD**
Alexander J. Taylor (State Bar No. 332334 )
2500 S. Highland Avenue
Suite 200
Lombard, Illinois 60148
Telephone: 331-307-7646
Facsimile: 630-575-8188
E-Mail: ataylor@sulaimanlaw.com
*Attorney for the Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER L. REED II,<br><br>Plaintiff,<br><br>v.<br><br>ALLEVIATE FINANCIAL SOLUTIONS, LLC,<br><br>Defendant. | Case No.  8:23-cv-01159<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;**<br><br>**2. VIOLATIONS OF THE ARKANSAS CREDIT REPAIR SERVICES ORGANIZATIONS ACT OF 2017, ARK. CODE § 4-91-202 ET SEQ.; and**<br><br>**3. VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, ARK. CODE § 4-88-101 ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT

NOW comes ROGER L. REED II ("Plaintiff"), by and through the undersigned, complaining as to the conduct of ALLEVIATE FINANCIAL SOLUTIONS, LLC ("Defendant") as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* the Arkansas Credit Repair Services Organizations Act of 2017 ("ACRSOA") under Ark. Code § 4-91-202, and the Arkansas Deceptive Trade Practices Act ("ADTPA") under Ark. Code § 4-88-101 *et seq.,* stemming from Defendant's unlawful conduct.

## JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within the Central District of California, conducts business within the Central District of California, and a substantial portion of the events or omissions giving rise to the claims occurred within the Central District of California.

## PARTIES

4. Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39), residing in Springdale, Arkansas, which lies within the Central District of California.

5. Defendant is a credit repair organization and debt settlement company representing its services as appropriate for those that cannot afford to pay off debt,

want financial freedom, and need a "fresh start." [1] Defendant is a limited liability company organized under the laws of the state of California with its principal place of business located at 2600 Michaelson Drive, Suite 700, Irvine, California 92614.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

8. In approximately November of 2022, Plaintiff was wanting some assistance in dealing with various obligations which were impacting his credit situation, and began looking into credit repair and debt management companies for assistance.

9. Plaintiff subsequently came upon Defendant, and spoke with Defendant regarding its services.

10. Defendant advised that Plaintiff would enroll a number of debts into Defendant's program, wat which point Plaintiff would make monthly payments to Defendant, who would in turn use such funds for the purpose of assisting Plaintiff in resolving enrolled obligations.

11. Defendant represented both directly and by implication that its services would ultimately benefit Plaintiff by improving her credit by resolving debts faster and for

---

[1] https://alleviatefinancial.com/

3

less than Plaintiff would otherwise be able to, in turn minimizing his debt to income ratio and making him more creditworthy.

12. Defendant further advised that Plaintiff would make certainly monthly payments, and within 2 months Defendant would start settling accounts and that, shortly thereafter, Plaintiff would receive a consolidation loan to pay off the remaining accounts at a reduced balance, leaving Plaintiff with one monthly payment that would be lower than paying the enrolled debts individually.

13. Finding desirable the nature of Defendant's services, Plaintiff entered into a contract with Defendant for its provision of services.

14. Plaintiff began making his monthly payments to Defendant, which totaled approximately $326 per month.

15. Although Plaintiff was current on most of his obligations at the time of his enrollment with Defendant, Defendant informed Plaintiff to cease paying his creditors and instead divert those funds to Defendant to enter settlements and pay down the enrolled debt.

16. This caused Plaintiff's credit score to drop precipitously – an aspect of Defendant's services which Defendant failed to clarify to Plaintiff prior to having Plaintiff sign up for Defendant's services.

17. Throughout the life of the parties' dealings, Plaintiff frequently called Defendant to ask for status updates.

4

18. Plaintiff placed dozens of phone calls and left messages trying to seek information regarding what Defendant was doing with Plaintiff's payments, but Defendant failed to respond to any of Plaintiff's communications or otherwise address Plaintiff's questions – despite representing in its contract that Defendant "will timely respond to all Client inquiries . . . ."

19. Despite Plaintiff maintaining his payments for months, Defendant failed to deliver the results in the timeframe represented by Defendant.

20. Defendant failed to deliver any results within the first two months of Plaintiff signing up, illustrating its deceptive representations regarding the speed with which Defendant's services would begin delivering results.

21. Eventually, Plaintiff was able to speak with one of Defendant's representatives, and Plaintiff inquired about receiving the loan he was promised when he signed up for Defendant's services.

22. Defendant advised that with one more of his monthly payments, Plaintiff would receive the consolidation loan promised by Defendant.

23. Plaintiff made his next payment; however, when Plaintiff attempted to receive the consolidation loan Defendant promised would be available, Plaintiff was denied financing.

24. Upon information and belief, Defendant routinely misrepresents the nature of its services, the benefits of its services, the timeframe results can be delivered, as well

as the availability of consolidation loans all in an effort to get consumers on the hook for services without any intent to provide the services in the manner represented.

25.  Upon further information and belief, throughout the time Plaintiff has made payments to Defendant, Defendant inappropriately diverted sums from Plaintiff's monthly payments that should have gone towards resolving Plaintiff's debts.

26.  Defendant's conduct in diverting funds in this manner is part of Defendant's fraudulent attempt to decrease the available sums available for settlement, in turn lengthening the time frame consumers have to make payments to Defendant, thus allowing Defendant more time to continue charging inappropriate fees under the guise of providing services that will completely fix consumers' credit.

27.  Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

28.  Plaintiff has suffered significant harm as a result of Defendant's conduct, including but not limited to emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, paying for nonexistent and deficient credit repair services, denial of the benefit of his bargain in his dealings with Defendant, and numerous violations of his state and federally protected interests to be free from abusive and deceptive practices by purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

29. Plaintiff repeats and realleges paragraphs 1 through 29 as though fully set forth herein.

30. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

31. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)(3)-(4)

32. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

33. Defendant violated the above provisions of the CROA through its representations that debts would be settled as soon as 2 months after Plaintiff signed up for its services. Defendant's representative made this representation attempting to convince Plaintiff that results would be delivered fast, despite its inability to deliver results that fast and ultimate failure to deliver the results in the timeframe

initially represented. This representation is further in contradiction with various disclaimers Defendant includes in its contract regarding the nature of its services, further illustrating the duplicitous nature of Defendant's representations.

34. Defendant further violated the above provisions of the CROA through its representations that Plaintiff would receive a consolidation loan. Defendant advised that Plaintiff would receive such a loan before Plaintiff agreed to use Defendant's services, and Defendant further told Plaintiff after he had signed up that, with one more month's payment, this financing would be provided. However, Plaintiff was not provided the financing represented by Defendant. Defendant misrepresented the availability and certainty with which Plaintiff would receive the loan in order to convince Plaintiff that he would be able to pay down the debts fast and in one fell swoop. The consolidation loan was further designed to suggest to Plaintiff that the credit issues he wanted to address would be cleaned up through the consolidation loan, which would in turn improve his credit faster than if no consolidation loan were provided.

35. Defendant further violated the above provisions of the CROA through its deceptive representations that Plaintiff would have inquiries responded to in a timely manner. Plaintiff called Defendant dozens of times and left a number of messages for Defendant that went without any response from Defendant. Defendant misrepresents the extent to which it will communicate with its customers and have

representatives available to assist consumers with questions so as to suggest to consumers it services have desirable qualities which they do not have.

36. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the fees that would be assessed in connection with the services offered. Defendant suggested to Plaintiff that his payments would go towards resolving obligations; however, Defendant deceptively omitted the fact that there would be extensive charges for various fees and services that were not properly explained to Plaintiff, including the fees charged by Defendant. Defendant's conduct was designed to convince Plaintiff that utilizing Defendant' services would be beneficial and result in substantial savings, while failing to mention any information that would make Plaintiff rethink the appropriateness of Defendant' program.

37. Defendant further violated the above provisions of the CROA through its fraudulent and deceptive conduct in making certain representations to induce consumers to use its services, only to cut against those representations in its contract with consumers. Defendant's inclusion of an integration clause further illustrates the extent to which Defendant is seeking to insulate itself from liability for the manner in which it markets its services to consumers.

38. Defendant further violated the CROA through its deceptive representations regarding the impact its services have on Plaintiff's credit. Defendant promised

Plaintiff that his credit would ultimately improve, especially after a consolidation loan was provided. However, Defendant's services had the exact opposite effect.

39. Further, Defendant violated the above provisions of the CROA through its deceptive and misleading suggestion that Plaintiff's best course of action would be to cease paying his creditors and instead divert those payments to Defendant.

### b.  Violation of CROA § 1679b(b)

40. The CROA, pursuant to 15 U.S.C. § 1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

41. Defendant violated § 1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Defendant charged and received consideration from Plaintiff on an upfront basis before any services were fully performed. Further, throughout the life of the parties' dealings, Defendant routinely charged Plaintiff fees or otherwise caused service fees to be created for services before such services were fully performed.

### c.  Violations of CROA § 1679c

42. The CROA, pursuant to 15 U.S.C. § 1679c, outlines the various disclosures and pieces of information that have to be provided to consumers prior to contracting

with consumers. § 1679c(b) requires these disclosures to be provided in a document separate from any agreement signed by a consumer.

43. Defendant violated the above provisions of the CROA through its failure to provide the CROA-required disclosures in any manner.

### d. Violation of CROA §§ 1679f(a)-(b)

44. The CROA, pursuant to 15 U.S.C. §§ 1679f(a)-(b), provides that any waiver, or attempt to attain a waiver, by a consumer of any protection provided or any right of the consumer under the CROA results in that contract being considered void and unenforceable – further making the attempt to attain a waiver of any right or protection under the CROA a separate violation of the CROA.

45. Defendant violated 15 U.S.C. § 1679f(b) through their attempt to obtain Plaintiff's waiver of the protections afforded under the CROA. Defendant' contracts contain numerous efforts to obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA, including but not limited to an attempt to obtain a waiver of Plaintiff's right to assert claims for the manner in which Defendant marketed its services to consumers.

WHEREFORE, Plaintiff, ROGER L. REED II, respectfully requests that the Honorable Court enter judgment in his favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c.  Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.  Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE ARKANSAS CREDIT REPAIR SERVICES ORGANIZATIONS ACT OF 2017

46. Plaintiff restates and realleges paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff is a "buyer" and "consumer" as defined by Ark. Code § 4-91-202(a)(1)-(2).

48. Defendant is a "credit repair services organization" as defined by Ark. Code § 4-91-202(a)(3)(A).

49. The ACRSOA, pursuant to Ark. Code § 4-91-202(c), outlines various disclosures that must be provided prior to contracting with consumers.

50. Defendant violated the above provision of the ACRSOA through its failure to provide the requisite disclosure in the manner required by the ACRSOA.

51. The ACRSOA, pursuant to Ark. Code § 4-91-202(e), provides a list of prohibited conduct for credit services organizations and its salespersons, agents, representatives, and third party contractors.

52. Pursuant to § 4-91-202(e)(4), no credit repair services organization shall "make or use any untrue or misleading representations in the offer or sale of the services of a credit repair services organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit repair services organization."

53. Defendant violated the above provision of the ACRSOA in much the same way it violated § 1679b(a)(3)-(4) of the CROA.

54. Pursuant to § 4-91-202(f)(2), an attempt by a credit repair organization to obtain a waiver of a consumer's protections provided by the ACRSOA constitutes a violation of the ACRSOA.

55. Defendant violated the above provision of the ACRSOA in much the same way it violated § 1679f(b) of the CROA.

WHEREFORE, Plaintiff ROGER L. REED II, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Ark. Code § 4-88-113(f);

c. Awarding Plaintiff' costs and reasonable attorney fees, pursuant to Ark. Code § 4-88-113(f); and,

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

56. Plaintiff restates and realleges paragraphs 1 through 55 as though fully set forth herein.

57. The ADTPA, pursuant to Ark. Code § 4-88-107(a), provides that "[d]eceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to" a list of certain conduct, which includes: knowingly false representations regarding characteristics of services; advertising services with intent not to sell them as advertised; using bait and switch advertising; taking advantage of consumers reasonably unable to protect their interests; and engaging in other unconscionable, false, or deceptive acts or practices.

58. Defendant violated these provisions of the ADTPA through its generally deceptive and unfair conduct directed towards Plaintiff, discussed above.

59. Furthermore, pursuant to Ark. Code § 5-63-302, engaging in for-profit "debt adjusting" is unlawful in the state of Arkansas.

60. Defendant's services constitute "debt adjusting" as defined by Ark. Code § 5-63-301(2).

61. As such, Defendant's overall deceptive and unfair conduct is further evinced given that Defendant provided services to Plaintiff that are entirely unlawful under Arkansas statutes.

14

62. Additionally, the ACRSOA, pursuant to Ark. Code § 4-91-202(h)(1), provides that a violation of the ACRSOA constituted a deceptive and unconscionable trade practice under § 4-88-107 of the ADTPA.

63. Therefore, Defendant violated the ADTPA through both its generally deceptive and unconscionable conduct directed towards Plaintiff, its provision of services deemed unlawful under Arkansas law, as well as through its specific violations of the ACRSOA which similarly constitute violations of the ADTPA.

WHEREFORE, Plaintiff ROGER L. REED II, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Ark. Code § 4-88-113(f);

c. Awarding Plaintiff' costs and reasonable attorney fees, pursuant to Ark. Code § 4-88-113(f); and,

d. Awarding any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Date: June 29, 2023                    Respectfully submitted.

                                       By: */s/ Alexander J. Taylor*
                                       Alexander J. Taylor (Bar No. 332334)
                                       **SULAIMAN LAW GROUP, LTD**
                                       2500 S. Highland Avenue, Suite 200
                                       Lombard, Illinois 60148

Telephone: 331-307-7646
Email: ataylor@sulaimanlaw.com
*Attorney for Plaintiff*