Michael A. Thurman
michael@thurman-legal.com
CA bar No.:123303
THURMAN LEGAL
1055 East Colorado Blvd., 5th Floor
Pasadena, CA 91106
(626) 399-6205 (Direct)
(626) 380-4880 (Facsimile)
Attorney for Defendant

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER L. REED, II,<br><br>    Plaintiff,<br><br>vs.<br><br>ALLEVIATE FINANCIAL SOLUTIONS, LLC,<br><br>    Defendant. | Case No.: 8:23-cv-01159<br><br>The Honorable David O. Carter<br><br>**DECLARATION OF ALANA CAMP IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>**Hearing:**<br><br>Date: October 30, 2023<br>Time: 8:30 am<br>Place: Courtroom 10A<br><br>Action Filed: June 29, 2023 |

### DECLARATION OF ALANA CAMP

Pursuant to 28 U.S.C. § 1746, I, Alana Camp, hereby declare as follows:

1. I am a United States citizen who is over the age of eighteen years of age. I have personal knowledge of the facts stated in this declaration, and if called as a witness, I can and will testify to the facts stated herein.

-1-

2. I am employed by Defendant Alleviate Financial Solutions, LLC, ("Alleviate") as its Compliance Officer and have been duly authorized as a Custodian of Records to certify authenticity of its records and submit this declaration on behalf of Alleviate.

3. Each of the records produced were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person or persons with knowledge of the matters, acting within the course of the regularly conducted business activity of Alleviate.

4. Each of the records produced were kept in the course of the regularly conducted business activity of Alleviate.

5. Each of the records produced were made as a regular practice in the course of the regularly conducted activity at Alleviate.

6. In the normal course of business Alleviate maintains Service Agreements it enters into with consumers. As Alleviate's Compliance Officer, I have access to the Service Agreements, and am familiar with these Service Agreements and the manner in which they are maintained.

7. Attached hereto as Exhibit "A" is a true and correct copy of the Service Agreement entered by and between Plaintiff Roger L. Reed, II and Defendant Alleviate Financial Solutions, LLC on or about November 10, 2022.

8. The Service Agreement which Plaintiff entered into with Defendant contains an arbitration provision at paragraph 15 on page 8.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 8th day of September, 2023 at Pomona, California.

Alana Camp

# Exhibit "A"

# SERVICE AGREEMENT

This agreement for negotiation services ("Agreement") is between Alleviate Financial Solutions LLC. ("AFS") and Roger Reed & ("Client") relating to negotiation services on Client's unsecured debt.

1. Services. AFS will review Client's financial circumstances, provide a phone consultation to confirm Client's understanding of and suitability for debt resolution, review for any potential defense(s) to the debt, negotiate and attempt to enter into settlements with creditors of the Client in an effort to modify and/or restructure Client's current unsecured debt (collectively, the "Services"). AFS and its staff will timely respond to all Client inquiries and keep the Client informed as to all offers of debt modification. AFS's obligation to negotiate shall only apply to specific unsecured debt obligations as disclosed by the Client that are included in Schedule A of this Agreement ("Target Debt"). A debt that is subject to legal action or arbitration will be excluded. AFS reserves the right, in its sole and absolute discretion, to reject the inclusion of any Target Debt or to subsequently remove a Target Debt. The Services do not include the following:

    a.   Tax, financial planning or accounting advice;
    b.   Credit repair, the correction of entries on credit reports or improving a credit score;
    c.   Any bankruptcy services;
    d.   Representation of Client in any lawsuit or legal proceeding;
    e.   Appearance at any arbitration or hearing on behalf of Client;

In the event a creditor or collector sues Client, whether related to a Target Debt or any other claim, AFS is under no obligation to provide representation.

2. Effective Date. This Agreement will become effective when executed by the Client, and Client has made an initial deposit to their AFS monitored Dedicated Account ("Effective Date").

3. Term. The term of this Agreement shall commence on the Effective Date and continue until the negotiated resolution of the Target Debts or until termination of this Agreement as provided in Section 11. The ability of AFS to settle and restructure the Target Debts is determined by the ability of Client to set aside funds and abide by Schedule B. The amount set aside is based on an estimate that the Target Debts will settle for approximately 52% of the amount enrolled. If Client sets aside funds in accordance with Schedule B, typically the first settlement occurs between month 4 and 6. Based on historical results for a typical client, it will take approximately 42 months to settle all the Target Debts.

4. Subcontracting. AFS may subcontract certain non-legal support and administrative tasks, including negotiation preparation procedures, with creditors and collectors, to a third party. AFS and other trained, licensed personnel will supervise the negotiation process and customer support. In any case the support, administration and negotiation preparation services provided by the third party will be performed in accordance with procedures established and monitored by AFS.

5. Client Obligations. The Client agrees to perform the following obligations:

    a. Provide AFS with all information and documents related to the Target Debt and any information requested by AFS. This information must contain the current account balance and the name of the creditor and account number. All information provided by Client must be truthful, complete, and accurate. AFS is under no obligation to verify information supplied by Client;

    b. Client will forward all correspondence from creditors, including collection letters, demands and complaints to AFS. If a creditor contacts, Client will direct the creditor or collector to AFS. If a creditor engages in harassing or abusive conduct, the Client will promptly notify AFS and provide complete and accurate information regarding such contacts

    c. Client will timely respond to all requests and communications from AFS or its representatives and will promptly provide AFS with any change in contact information. Client will promptly forward all offers of settlement received from creditors or collectors;

    d. Client will set aside, save or deposit in a segregated insured bank account selected and controlled by Client the amounts listed on Schedule B in

order to have sufficient funds to satisfy the Target Debts;

    e. Client will timely pay the costs of the program as provided in Section 7;

    f. Client agrees to timely and fully pay all settlements or restructure of debt negotiated by AFS and approved by Client.

6. <u>AFS's Obligations and Client's Acknowledgement.</u> In consideration for Client's obligations, AFS will provide the Services, including use its best efforts to settle or restructure unsecured debts. Client agrees that AFS makes no specific guarantee regarding the outcome, including successful modification or restructure of debt, and if AFS can successfully reduce the balance of all Target Debts. Unless otherwise directed by Client, AFS generally attempts to settle accounts sequentially and based on amount of funds set aside for settlement. An enrolled account is considered settled when Client approves the settlement, negotiation or other alteration of the account and makes at least one payment to the creditor on the approved settlement ("Approved Settlement"). A creditor may not be willing to discuss settlement until the account is in default status. AFS offers its advice and services based on the information as provided by Client and Client agrees that AFS is not responsible and assumes no liability for changes in the law, changes in Client's financial situation, or facts revealed after review of documentation that could have affected any advice AFS gives Client. AFS will maintain in confidence all information that Client provides to AFS, except as specifically provided for in Section 13.a.

7. <u>Fees, Costs and Refunds.</u> Client shall pay to AFS a ("Success Fee") equal to 25.00% of their total enrolled debt. The Success Fee is calculated based on the enrolled debt amount at the time of enrollment per Target Debt. Upon the Approved Settlement, the Success Fee on the Target Debt shall be immediately due and payable to AFS. Client authorizes its payment processor utilized by Client to initiate debit of Client's checking or savings account for payment of the Success Fee upon an Approved Settlement. Client acknowledges and understands all fees held in the Custodial Account belong to the client, with the exception of those fees earned by AFS for services provided under this agreement. Fees paid to AFS will not be used to pay creditors of Client. Client may withdraw all fees in the Custodial Account, with the exception of those fees earned by AFS. Client acknowledges that a material portion of the Success Fee will be paid to third party contractors to perform customer service and account administration.

Client agrees to set aside the amount outlined in Schedule B in a Federal Deposit Insurance Corporation (referred to as "F.D.I.C.") insured bank account selected by Client to accumulate funds to be used for settlement purposes and for the payment of the Success Fee.
This account can be at a bank or other financial institution as determined by Client. Client agrees to have any earned Success Fees to be automatically drafted by AFS from this segregated bank account. All costs associated with establishing this account shall be the sole responsibility of Client. Client agrees not to close the Custodial Account if a success fee is due and unpaid.

8. <u>Client Acknowledgements.</u> Client acknowledges and agrees that:

   ❖ Client has a financial hardship that impairs Client's ability to timely and fully satisfy their unsecured debt obligations;
   ❖ The outcome of AFS's negotiation of any Target Debt is uncertain and results may vary. AFS does not and cannot guarantee a specific result as to any debt or the success of the representation. One potential reason for a lack of a settlement is the reluctance of a particular creditor to negotiate a debt;
   ❖ Difficult Creditors: Certain creditors are more difficult to negotiate with than others; some substantially so. The presence of an enrolled debt with a difficult creditor may result in a less favorable settlement for that particular debt than the same debt with a non-difficult creditor. If Client's enrolled accounts consist of one or more creditors which are known or believed to be "difficult- creditors", a greater degree of personal involvement may be required from Client in order to obtain the best possible settlement. The Client has the right to modify this agreement should AFS identify a "difficult-creditor". Such modification pursuant to this clause may only be in the form of the removal or addition of Target Debts owned by "difficult-creditors" as identified by AFS. Furthermore this clause does not limit the Client's right to cancellation as outlined in section 11.
   ❖ The Services provided by AFS do not include the modification, correction or improvement of Client's credit reports or credit score;
   ❖ By signing this agreement client represents and warrants none of the Target Debts being enrolled are cross collateralized with other accounts held by the same creditor. Additionally, client understands that if any accounts enrolled in the Alleviate program are cross collateralized with another account from the same creditor, such as a vehicle loan account, this could result in the creditor repossessing the underlying collateral of that account, such as a vehicle, even if the cross collateralized account is not in any stage of delinquency.

- The ability of AFS to settle and restructure the Target Debts is determined by the ability of Client to set aside funds and abide by Schedule B. The amount set aside is based on an estimate that the Target Debts will settle for approximately 52% of the amount enrolled. If Client sets aside funds in accordance with Schedule B, typically the first settlement occurs between month 4 and 6. Based on historical results for a typical client, it will take approximately 42 months to settle all the Target Debts.
- AFS's Services do not prevent creditor or collection agency harassment, or prevent efforts of collection by creditors or collection agencies to collect the Target Debt, including the filing of a lawsuit;
- Client remains responsible for the repayment of the Target Debts. AFS will not pay the Target Debts. If a settlement is reached on a particular debt, AFS will advise Client. If Client approves the settlement, Client is solely responsible for the payment of the settlement or restructured debt from FDIC account.
- The discharge of indebtedness of $600 or more is considered taxable income and Client should consult a tax professional as to the tax consequences;
- Client will incur late fees and penalties on the Target Debts if Client stops making the minimum monthly payments on any of the Target Debts;
- Client's effort to settle debts will likely adversely affect the client's credit score. For certain professions and jobs, a negative credit score may impact employment status;
- Neither AFS nor any third party has advised Client that a condition of this program is to stop making further payments on their unsecured debts.
- **Client understands and acknowledges a Creditors may refuse to accept settlement of any Target Debt for which Client has not made at least six (6) payments towards the debt. Client understands that Alleviate does not recommend the inclusion of any debt where less than six (6) payments have been made. Furthermore, Client understands that Creditors of such Target Debts are more likely to take legal action to collect the full balance.** *RR*
- **If Client is 65 years of age or older, Client further acknowledges that there is probability that the Target Debts enrolled could be written off by Client's creditors and become more difficult to collect upon death. Additionally, Client has advised AFS that they are fully competent to make decisions on their own and have had an opportunity to consult with family members or advisors prior to executing this Agreement.**

9. Additional Debt. Client acknowledges that AFS has advised Client not to incur any new or additional unsecured debt and should refrain from using or obtaining credit while AFS is providing its Services. Client understands all credit cards and/or lines of credit shall be closed and that no additional credit cards and/or lines of credit should be applied for during the representation. Client understands that they may keep one credit card, not listed on Schedule A, open for emergency purposes only. This credit card should not be from the same issuing bank as any accounts listed on Schedule A.

10. Impact on Credit Rating. Client acknowledges that nonpayment, minimal payments, or settlement payments to creditors will likely result in negative credit information transmitted to the major credit reporting agencies, which will impact Client's credit score.

11. Right of Rescission, Termination and Severability. Client or AFS may terminate the Agreement at any time without any termination fee or penalty. The party choosing to terminate the Agreement, will document the decision by sending ten (10) days written notice to the other party. The termination will occur upon receipt of such notice. If such termination occurs, the Client shall only be responsible for the "Success Fees" incurred through the date of termination. AFS may cancel this Agreement if the Client fails to timely make payments, fails to perform on an agreed upon settlement, rejects a reasonable settlement offer(s) or files for bankruptcy.

12. Authorizations. In order to perform the Services, Client authorizes AFS to:
   a. Disclose information regarding Client's financial condition or status to any creditor or collector related to the settlement or restructure of debts. AFS may also obtain information concerning Client from such creditors or collectors.
   b. Disclose to creditors and collectors that AFS and its representatives, or subcontractors, are authorized to negotiate debt settlement or restructure terms on behalf of Client.
   c. Negotiate and restructure the unsecured debt listed in Schedule A of this Agreement.

13. Confidentiality. AFS agrees that any information provided by Client will be kept confidential, pursuant the attached Privacy Policy, only be used in providing the Services and within the authorization described in this Agreement.

14. Disclosures and Disclaimers. Client acknowledges and understands that there are other options available to resolve their existing financial situation,

including consumer credit counseling and bankruptcy. (See Exhibit A of this Agreement for further information). Client acknowledges that each of these options has been explained and the consequences and advantages of each option have been explained and that Client has elected to participate in the Services. Client further understands and acknowledges, AFS maintains Surety Bonds and Insurance Policies for consumer claims.  Consumer Credit Counseling may have less of an impact on the Client's credit rating and will reduce interest rates on current debt, but requires the full payment of Client's existing debt. Bankruptcy discharges the majority of the client's debt. Notwithstanding, Client has requested AFS to pursue the settlement or restructuring of their debts in an effort to avoid bankruptcy.

15. **Arbitration. In the event of any claim or dispute between Client and AFS related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request to the other party. The parties shall agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service ("JAMS") or American Arbitration Association ("AAA"), as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final, shall not be subject to vacation or modification, and may be entered into any judgment in any court of competent jurisdiction. The conduct of the arbitration shall be subject to the then current rules of the arbitration service. The costs of arbitration, excluding legal fees, will be split equally or be borne by the losing party, as determined by the arbitrator. The parties shall bear their own legal fees. If either party fails to comply with the arbitrator's award, the injured party may petition the circuit court for enforcement. The Parties agree that either party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff in a class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative or class proceeding. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including reasonable attorney's fee for having to compel arbitration or defend or enforce the award. Binding Arbitration means that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator. This Section and the Arbitration requirement shall survive any termination.**

16. <u>Communications</u>. Client shall direct all communication and forward all documents to AFS at:

**Alleviate Financial Solutions LLC.**

92 Corporate Park #C-407

Irvine, CA 92606

**Email: help@alleviatefinancial.com**

**Phone:** (888) 879-9777

**Fax:** (888) 655-1597

By initialing below, I hereby agree to the receipt of future calls delivered using automated telephone dialing equipment and/or artificial or pre-recorded voice messages from AFS and its affiliates or agents at any phone number or email address that I provided in the application, or using any phone number or email address that I provide in the future. I expressly consent and request to receive calls and text/SMS messages from AFS and its affiliates or agents and waive any prior No Call registrations for the purpose of these communications. Standard text message rates will apply. I also understand that my consent is not a condition of purchase.

Initials ___*RR*___

17. <u>Integration</u>. This Agreement and all schedules and exhibits are the complete and exclusive statement of the Agreement of the parties and supersede

any proposal, prior agreement, oral or written, and any other communication related to this matter.

18. <u>Enforceability</u>. In the event that any portion of this Agreement is determined to be illegal or unenforceable, the determination will not affect the validity or enforceability of the remaining provisions of this Agreement, all of which shall remain in full force and effect. The parties agree to insert another provision that will be valid to come in closest to the original intent of the Agreement.

19. <u>Amendment</u>. This Agreement may be modified by a subsequent agreement by the parties only by an instrument in writing, signed by both AFS and Client and no waiver of any provision or condition of this Agreement shall be effective or binding unless such waiver be in writing and signed by the party claiming to have given such waiver.

20. <u>Right to Cancel</u>. AFS provides to Client the unrestricted right to cancel, terminate this Agreement and receive a return of all monies paid within 10 business days following execution of this Agreement. A notice of cancellation form is attached to this Agreement. In order to effectively cancel, Client will need to complete, sign and send to AFS at the address, fax, or email address provided on the form.

You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.

**"Client"**

Client Signature       *Roger Reed*
Name:                  Roger Reed
Co-Client Signature
Name:
Date:                  11/10/2022